**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BYJU'S ALPHA, INC.,[1] | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 24-10140 (BLS) |
| | ) | |
| | ) | Adv. Pro. Case No. 25-50822 (BLS) |
| BYJU'S ALPHA, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| GLAS TRUST COMPANY LLC, | ) | |
| | ) | |
| Intervenor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OCI LIMITED and RUPIN BANKER, | ) | **Related D.I. 526, 527, 529, 536, 537** |
| | ) | **Related Adv. D.I.: 49, 50 52, 55** |
| Defendants. | ) | |
| | ) | |

**OMNIBUS REPLY IN SUPPORT OF DEBTOR'S MOTION TO APPROVE COMPROMISE UNDER BANKRUPTCY RULE 9019 AND MOTION TO FILE UNDER SEAL CERTAIN INFORMATION INCLUDED THEREIN**

The debtor BYJU's Alpha, Inc. (the "Debtor") respectfully submits this reply (the "Reply") to the objections (the "Objections") filed by (1) Rupin Banker ("Banker") (Adv. D.I. 55) and (2) Camshaft Capital Fund, L.P., Camshaft Capital Advisors, LLC, Camshaft Capital Management, LLC, and Riju Ravindran (collectively, "Camshaft and Riju," and with Banker, the "Objectors") (D.I. 536, 537) to the Debtor's *Motion Pursuant to Bankruptcy Rule 9019 for Entry of an Order Approving Compromise and Agreement Between the Debtor, GLAS Trust Company LLC, and OCI Limited* (Sealed D.I. 526, Adv. D.I. 49; Redacted D.I. 527, Adv. D.I. 50, the "9019

[1] The Debtor in this Chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: BYJU's Alpha, Inc. (4260). The location of the Debtor's service address for purposes of this Chapter 11 Case is: 1007 N. Market Street Ste. G20 452, Wilmington, Delaware 19801.

Motion") and *Motion, Pursuant to Section 107(b) of the Bankruptcy Code to Seal Certain Confidential Information Included in Debtor's Motion Pursuant to Bankruptcy Rule 9019 for Entry of an Order Approving Compromise and Agreement Between the Debtor, GLAS Trust Company LLC, and OCI Limited* (D.I. 529, Adv. D.I. 52, the "Sealing Motion," and with the 9019 Motion, the "Motions"). In support of the Reply, the Debtor states as follows:

**PRELIMINARY STATEMENT**[2]

1. The Debtor, in its business judgment, has determined to settle, with Court approval, the OCI Claims in exchange for information and other consideration important to the Debtor and its estate. Significantly, the Debtor's true stakeholder—GLAS Trust Company LLC (in its capacity as administrative and collateral agent)—supports the Settlement, the terms of which the Debtor seeks to maintain under seal in order to protect information that, if disclosed, could undermine the Debtor's pending and potential litigation against various parties who have already shown themselves willing to obstruct the Debtor's enforcement and recovery efforts.

2. The only objectors are individuals and entities who are defendants in this and a related adversary proceeding whose rights and obligations are not impacted by the Settlement and who are not otherwise parties in interest in this case. *See* 11 U.S.C. § 1109(b). In an effort to address Banker's Objection, however, the Debtor has filed a revised proposed order (the "Revised Proposed Order") that expressly clarifies that the Settlement does not purport to, and indeed will not, impact the rights or obligations of Defendant Rupin Banker. *See* Revised Proposed Order ¶ 3. Nor for present purposes does the Debtor offer the Declaration of Oliver Philip Chapman (9019

---

2 Capitalized terms not defined herein have the meanings given to them in the Motions.

Mot., Ex. B) to prove claims against Banker or anyone else. *See id.* Thus, Banker, like Camshaft and Riju, has no standing to object to the Settlement.

3. From the Debtor's perspective, the revisions to the proposed order simply reiterate what was already true when the 9019 Motion was filed: that Banker's rights—and certainly those of Camshaft and Riju—are not being impacted and are not at issue here. As has been the case distressingly often throughout this case, the Debtor suspects the actual purpose of the Objections is not to preserve the parties' bona fide rights, but rather to understand what the Debtor may come to learn from OCI under the Settlement in order to further preempt, obstruct, and delay the Debtor's years-long effort to locate and retrieve the stolen Alpha Funds and hold wrongdoers accountable. The Revised Proposed Order should put the Objectors' pretextual concerns to bed. The Court should grant the Motions.

## REPLY

### I. The Objectors Do Not Have Standing.

4. As a threshold matter, none of the Objectors have standing to object to the 9019 Motion. They are not creditors or any other type of party in interest under section 1109(b) of the Bankruptcy Code; indeed, they have no incentive to see the Debtor succeed, including in uncovering the complete truth of what happened to the Alpha Funds. *See* 11 U.S.C. § 1109(b) (defining parties in interest who "may appear and be heard on any issue in a case under this chapter" to include creditors and equity holders of the debtor).[3] And while Banker is a Defendant in the Adversary Proceeding, his status as such does not, without more, bestow him with standing

[3] None of the Objectors filed proofs of claim in this case. And while Camshaft asserted counterclaims against the Debtor in its (separate) adversary proceeding, those claims were disallowed under the Debtor's confirmed chapter 11 plan. *See* D.I. 475, Plan § VIII.H.1 (Camshaft's claims are deemed disallowed pursuant to section 502(d) of the Bankruptcy Code).

to object. *See In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1332 (3d Cir. 1990) (generally, a "non-settling defendant is not prejudiced by the settlement and therefore has no standing to contest the settlement"); *In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081, 1087 (3d Cir. 1980) (non-settling party may not object to settlement terms that do not affect its own rights). While there is an exception to this general rule where a non-settling defendant "can demonstrate that they will suffer some form of legal prejudice" as a result of the settlement, *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995) (citations omitted), that is not the case here. The Revised Proposed Order expressly provides that Banker's rights and obligations are not impacted in any way by the Settlement. And as Banker does not even have standing to object to the Settlement, his due process rights (Banker Obj. ¶¶ 27-28) are not implicated.

**II. <u>The 9019 Motion Should Be Granted.</u>**

5. For the reasons discussed in the 9019 Motion (¶¶ 5-6, 20-24), the Settlement is "fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). The Objectors do not attempt to argue otherwise.

6. Indeed, one of the Debtor's goals in this chapter 11 case has been to determine the truth of what happened to its primary asset—the Alpha Funds and the proceeds thereof—in order to recover assets for the benefit of its stakeholders, who are owed well in excess of a billion dollars. The information and other consideration being provided by OCI under the Settlement makes the Settlement, in the Debtor's business judgment, fair, reasonable, and in the best interests of its estate, particularly in light of the costs and time attendant to continued litigation of the OCI Claims. *See In re Martin*, 91 F.3d 389, 392 (3d Cir. 1996) (courts weighing whether to approve a settlement under Bankruptcy Rule 9019 should consider the expense, inconvenience, and delay attendant to

litigation and difficulties of collection). There is no reason to delay approval of the 9019 Motion, as the Objectors ask the Court to do.

**III. <u>The Sealing Motion Should Be Granted.</u>**

7. "[D]espite the important interests advanced by public access to judicial records, the right of access is '***not absolute***.'" *In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 746 (D. Del. 2018), *aff'd sub nom. In re A C & S Inc*, 775 F. App'x 78 (3d Cir. 2019) (quoting *Nixon v. Warner Comm'cns, Inc.*, 435 U.S. 589, 598 (1978)) (emphasis added). Numerous courts have acknowledged that, as here, affording court records a protective seal may be necessary if access is sought for "improper purposes," *Nixon*, 435 U.S. at 597-98, or "to protect the bankruptcy estate." *In re Farmland Indus*., 290 B.R. 364, 369 (Bankr. W.D. Mo. 2003).

8. Congress has expressly carved out such exceptions to the right of public access in section 107(b) of the Bankruptcy Code. *See In re FTX Trading Ltd.*, 2024 WL 4948827 (D. Del. Dec. 3, 2024) (Dorsey, J.) (as "the Third Circuit has observed, 'Congress specifically circumscribed that broad right by codifying the common law principle that the public's right of access to judicial records is not absolute'" (quoting *A C & S Inc*., 775 F. App'x at 80)). Section 107(b) mandates that courts "shall" protect the moving party's interest where court filings contain "a trade secret or confidential research, development, or commercial information." 11 U.S.C. § 107(b)(1). Bankruptcy Rule 9018 implements this protection by authorizing courts to "issue any order that justice requires [] to protect the estate." Fed. R. Bankr. P. 9018.

9. As noted, the Debtor's focus during its chapter 11 case has been investigating and locating the assets of its estate, litigating to recover them, and enforcing resulting judgments. In other words (and contrary to Objectors' arguments), that is its "commercial operation," and a

litigation disadvantage for the Debtor supplies proper grounds for sealing.[4] *See Despins v. Wildes & Weinberg, P.C. (In re Kwok)*, 2025 WL 368519, at *5, 8 (Bankr. D. Conn. Feb. 3, 2025) (noting that the trustee "has been forced to ceaselessly litigate, and arguably relitigate, turnover of estate assets and avoidance of transfers …. [h]ence the commercial operation of [the debtor's] bankruptcy estate is the investigation of [its] assets and business affairs and the litigation of Chapter 5 claims and related claims under state, federal, and foreign law for the benefit of the estate" and finding that the terms of the proposed settlement represented confidential commercial information that must be sealed upon the trustee's request); *see also In re 4 Front Petroleum, Inc.*, 2007 WL 3005183, at *1 (Bankr. N.D. Okla. Oct. 11, 2007) (finding information protected by section 107(b) where it "explains the proposed litigation strategy of the [estate]" and, if disclosed, would "undermine the value of estate assets (the claims) by disclosing the [estate's] evaluation of the merits and litigation strategy to the target defendants").

10. Given that the Debtor has litigation pending with numerous other parties relating to the subject matter of the Adversary Proceeding and the Settlement, disclosure of the Confidential Information would place the Debtor at a disadvantage in such litigation and otherwise diminish recovery prospects. Indeed, it is telling that Riju is one of the parties moving to unseal the Settlement. Riju has demonstrated a complete contempt of the Court and its rules,[5] *except* when he can strategically leverage them in his favor—the theme of "selective participation" that this Court unfortunately has seen far too often in this bankruptcy. Accordingly, as in *Kwok* and *4*

---

[4] In this way, *In re Alterra Healthcare Corp.*, 353 B.R. 66 (Bankr. D. Del. 2006) is distinguishable. There, the court found that the debtor, which "is in the business of providing assisted living arrangements and healthcare to elderly residents [] failed to show how the process of handling tort claims is a critical part of its operation that would result in an unfair advantage." *Id.* at 76-77.

[5] *See, e.g.*, Adv. Pro. No. 24-10140, Dkts. 204, 313; Aug. 21, 2025 Hr'g Tr., Adv. Pro. No. 24-10140.

*Front Petroleum*, the Debtor is seeking to protect its estate by maintaining the confidentiality of its Settlement with OCI, including based upon its well-grounded concerns about Objectors' true intentions. *Kwok* at *6.[6] And for these same reasons, the Objectors are not entitled to receive, review, and take a position on the Settlement.[7]

## **CONCLUSION**

For the foregoing reasons and the reasons discussed in the 9019 Motion and the Sealing Motion, the Debtor respectfully requests that the Court grant the Motions and enter an order substantially in the form of the Revised Proposed Order.

---

[6] In *In re Wells Fargo Bank, N.A.*, 2019 WL 642850 (Bankr. W.D. Pa. Feb. 14, 2019), cited by Camshaft and Riju in their objection to the Sealing Motion (¶¶ 10-11), the "sole articulated basis for sealing the Settlement Agreement" was to protect the non-debtor settling party's litigation positions in similar cases, not to protect the debtor and its estate. *Wells Fargo*, 2019 WL 642850, at *1; *see also Anthracite Capital, Inc. v. Deutsche Bank, AG (In re Anthracite Capital, Inc.)*, 492 B.R. 162 (Bankr. S.D.N.Y. 2013) (providing third parties with a litigation advantage in outside actions does not justify sealing a court document). Moreover, unlike in *Bank of America National Trust and Savings Association v. Hotel Rittenhouse Associates*, 800 F.2d 339, cited by Camshaft and Riju (¶ 14), the Debtor has articulated a basis for sealing the Confidential Information other than a "generalized interest in encouraging settlements." *Id.* at 356.

[7] This case is also easily distinguishable from *Geltzer v. Andersen Worldwide, S.C.*, 2007 WL 273526, at *4 (S.D.N.Y. Jan. 30, 2007), cited by Banker in his Objection (¶ 18-19). In that case, the trustee did not provide the ***court*** with an unredacted version of the settlement agreement it was being asked to approve. *Geltzer*, 2007 WL 273526, at *5. Here, the Debtor has provided fully unredacted documents to the Court, as well as the U.S. Trustee, who has not objected to either Motion.

Dated: November 25, 2025
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Kenneth J. Enos*

Robert S. Brady (Del. No. 2847)
Kenneth J. Enos (Del. No. 4544)
Jared W. Kochenash (Del. No. 6557)
Timothy R. Powell (Del. No. 6894)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
rbrady@ycst.com
kenos@ycst.com
jkochenash@ycst.com
tpowell@ycst.com

-and-

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Benjamin Finestone (admitted *pro hac vice*)
Kate Scherling (admitted *pro hac vice*)
Jordan Nakdimon (admitted *pro hac vice*)
295 Fifth Avenue
New York, New York 10016
Tel.: (212) 849 7000
benjaminfinestone@quinnemanuel.com
katescherling@quinnemanuel.com
jordannakdimon@quinnemanuel.com

*Counsel for Debtor, BYJU's Alpha, Inc.*